The appellant, Eric M. Blankenship, was convicted of burglary in the first degree and of attempted murder. He was sentenced under the Habitual Felony Offender Act to life in prison without the possibility of parole. The appellant raises two issues on appeal.
 I
First the appellant argues that there was insufficient evidence to find him guilty of burglary and of attempted murder. Section 13A-7-5(a)(1), Code of Alabama 1975, states: *Page 1323 
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon."
Attempted murder is defined is §§ 13A-6-2 and 13A-4-2. Section13A-6-2 states:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person."
Section 13A-4-2 states:
 "(a) A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
The state's evidence tended to show that on the evening of June 2, 1990, Marie Henderson was in her home alone when she walked into the kitchen to answer the phone. All she remembers after this is feeling "dizzy" and finding herself in the living room. She looked at herself in the mirror and saw blood all over her face and neck. She had been shot in the face and neck with a shotgun. Dr. James Williams testimony at trial revealed that the injuries the victim suffered were severe and life-threatening. Dr. Williams further stated that after X-rays were taken of the victim, he discovered what he thought to be pellets embedded in her neck. The victim underwent five operations as a result of the injuries she sustained. At the time of trial, she had at least one more operation scheduled. Ms. Henderson also stated that her purse was missing from her home. She had approximately $420.00 in her purse when it was taken.
Sharon Clark, the appellant's girlfriend at the time of the offense, testified that she and the appellant had gone over to Marie Henderson's house on the evening of June 2, 1990. The appellant had borrowed an automobile from a friend. The appellant had for several years before the incident lived in the victim's house. At the time of the offense he had not lived in the victim's house for several months. When the appellant and Sharon arrived at the victim's house, they parked on a road by the house, and the appellant went into the house alone. He came out carrying a "long" gun and looked into the gun while they were standing in the driveway. Several minutes later he went back into the house. He told Sharon to knock on the door. Sharon heard a loud noise. He came out after about 10 minutes, carrying the gun and another object. When the appellant and Sharon got to the car, she realized that the object the appellant had in his hand was a purse. The appellant told her to look through the purse, but she opened it and gave it back to him saying that she could not do it. The appellant then proceeded to go through the contents of the purse, take something out of the purse, and put it in his pocket. They then drove to the Cedar Creek Bridge where the appellant told Sharon to throw the gun and the purse in the water. He then told Sharon to tear up what she thought were pictures. As she did, some of these pieces fell onto the floor-board of the car. Sharon testified that she was afraid of the appellant.
Several days later the appellant returned the car to his friend. The appellant was arrested that same evening, and the car was taken to the police department. The car was returned to its owner about an hour later. The next day, the car was again impounded by the police department and was re-examined. At this time, several torn pieces of photographs were found on the floorboard of the car. The victim identified those pieces at trial as being from pictures similar to those that were in her purse at the time it was stolen.
Officer Mike McBurnett of the Talladega County Sheriff's Department further testified that a live shotgun shell was found in the victim's driveway. A state's witness also testified that the appellant was seen carrying a lot of money the day after the incident. *Page 1324 
Testimony further revealed that Sharon Clark had made a statement to the police several days after the incident, stating that she and the appellant were together the whole day of the incident and that they did not go to the victim's house. At trial, she stated that this statement was false. She made this statement to the police because the appellant had threatened her.
Initially, the appellant contends that he could not be convicted solely on the testimony of Sharon Clark, because she was an accomplice to the crimes. However, the record supports the conclusion that Sharon was not an accomplice. The appellant made no argument at trial that she was an accomplice, no instructions were requested on accomplice testimony, and there is evidence in the record that she was not charged with the offenses and was not going to be charged in the future. Thus, we find that her testimony at trial did not need corroboration under § 12-21-222, Code of Alabama 1975.
In considering a question of whether the evidence was sufficient to support a prima facie case, this court must consider the evidence in the light most favorable to the prosecution and accord the state all legitimate inferences therefrom. Summerville v. State, 429 So.2d 651
(Ala.Cr.App. 1982). See also Higdon v. State, 527 So.2d 1352
(Ala.Cr.App. 1988); King v. State, 505 So.2d 403
(Ala.Cr.App. 1987). The weight of evidence is for the jury to measure. Walker v. State, 416 So.2d 1083 (Ala.Cr.App. 1982). Furthermore, any questions concerning the appellant's intent were left to the jury for its determination. The record clearly contains sufficient evidence to convict the appellant on both counts.
Even if Sharon Clark were to be considered an accomplice, there was sufficient corroboration of her testimony to satisfy the accomplice statute. Other evidence, such as the pieces of pictures found in the car that the appellant borrowed, the money he had on him the next day when he had not been paid, the live shell found in the victim's driveway, and the appellant's actions, furnishes evidence sufficient to corroborate Clark's testimony. Evidence offered to corroborate an accomplice's testimony may be entirely circumstantial. See Miller v. State,518 So.2d 801 (Ala.Cr.App. 1987). "A combination of facts may be sufficient to corroborate the testimony of an accomplice even though each single fact, standing by itself, is insufficient."Jackson v. State, 534 So.2d 689, 691 (Ala.Cr.App. 1988).
The trial court committed no error in submitting this case to the jury for its determination.
 II
The appellant next argues that the trial court erred in allowing several items to be received into evidence without having first established a chain of custody.
" 'The establishment of a chain of custody is needed to show a reasonable probability that the evidence has not been tampered with or altered.' Bridges v. State, 516 So.2d 895, 903
(Ala.Cr.App. 1987). (Emphasis added [in Holder])." Holder v.State, 584 So.2d 872, 876 (Ala.Cr.App. 1991).
 " 'The principles governing chain of custody challenges were outlined in United States v. Lane, 591 F.2d 961 (D.C. Cir. 1979), as follows:
 " ' "Tangible evidence of crime is admissible when shown to be 'in substantially the same condition as when the crime was committed.' And it is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved '[unless the accused makes] a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering.' If, however, that condition is met, the Government must establish that acceptable precautions were taken to maintain the evidence in its original state.
 " ' "The undertaking on that score need not rule out every conceivable chance that somehow the identify or character of the evidence underwent change. '[T]he possibility of misidentification and adulteration must be eliminated,' we have said, 'not absolutely, but as a matter of reasonable probability.' So *Page 1325 
long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in the light of surrounding circumstances." ' "
Moorman v. State, 574 So.2d 953, 956-7 (Ala.Cr.App. 1990). See also Snowden v. State, 574 So.2d 960 (Ala.Cr.App. 1990).
The appellant contends that the pieces of photographs discovered in the car which the appellant had borrowed should not have been received into evidence since they were not discovered in the car until several days after the incident. The appellant was taken into custody on the morning of June 3. The car that he had been driving was also taken by the police at this time. The pieces of photographs were not found until the car was impounded again several days later. At trial, the owner of the car stated that he did not put the pieces of photographs in the car, nor did he take anything out of the car after the appellant had used the vehicle. Applying the totality of the circumstances test, we conclude that there is a "reasonable probability" of the integrity of the evidence. SeeHolder, supra. The trial court committed no error in allowing the pieces of photographs to be received into evidence.
The appellant further contends that the trial court erred in allowing photographs of the victim's house to be received into evidence. The appellant contends that because the photographs of the house were not taken until the day after the incident, there was a possibility that the house was not in the same condition as when the incident occurred and, therefore, the pictures should not have been received into evidence.
Officer Billy Joe Pope testified that he arrived at the house not long after the incident, went through the house to search for the victim's purse, and then left to go to the hospital to which the victim had been taken. Pope testified that when he and the officer who took the photographs of the house arrived the next day, the house was in substantially the same condition as it was when he had gone through the house the previous evening. "The test for determining the admissibility of a photograph is whether it is a true and faithful representation of the place or subject it purports to represent as it existed at a time pertinent to the inquiry." Elmore v. State,414 So.2d 175 (Ala.Cr.App. 1982). Without some showing of ill will, bad faith, evil motivation, or tampering, it is reasonable to assume that photographs of the interior and exterior of an empty house are not different from the day before. The photographs were correctly received into evidence. No error occurred here.
For the reasons stated above, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.
 *Page 215