869 So.2d 509 (2002)
James A. HARRISON, Jr.
v.
STATE of Alabama.
CR-00-0972.
Court of Criminal Appeals of Alabama.
May 31, 2002.
Opinion on Application for Rehearing January 31, 2003.
*512 L. Joel Collins, Phenix City; and Walter L. Gray III, Phenix City, for appellant.
William H. Pryor, Jr., atty. gen., and Regina F. Speagle, asst. atty. gen., for appellee.
BASCHAB, Judge.
The appellant, James A. Harrison, Jr., was convicted of capital murder for the killing of Thomas Fred Day, Jr. The murder was made capital because the appellant committed it during the course of a first-degree robbery. See § 13A-5-40(a)(2), Ala.Code 1975. After a sentencing hearing, the jury recommended, by a vote of 11-1, that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death. The appellant filed a motion for a new trial, which was deemed denied by operation of law. See Rule 24.4, Ala. R.Crim. P. This appeal followed.
Because the appellant does not challenge the sufficiency of the evidence to support his conviction, a lengthy recitation of the facts of the case is not necessary. However, we have reviewed the evidence, and we find that it is sufficient to support the appellant's conviction. The following summary of the relevant facts, which the trial court prepared, may be helpful to an understanding of this case:
"Upon the jury verdict of guilty of murder during robbery in the first degree, the court adjudges the Defendant, James A. Harrison, Jr., guilty of the murder of Thomas Fred Day, Jr. during robbery in the first degree in that the Defendant, James A. Harrison, Jr., did intentionally cause the death of Thomas Fred Day, Jr. by cutting or stabbing him with a knife or other sharp instrument, and James A. Harrison, Jr. caused the death of Thomas Fred Day, Jr. during the time that James A. Harrison, Jr. was in the course of committing a theft of property, namely numerous compact discs, and a motor vehicle, a Mazda 626 with Alabama Tag # 57AJ709, the property of Thomas Fred Day, Jr. with intent to overcome his physical resistance or physical power of resistance, while James A. Harrison, Jr. was armed with a deadly weapon, a knife or other sharp instrument.
"The Court finds from the evidence submitted at trial that between January 12, 1998 and January 16, 1998 the Defendant, James A. Harrison, Jr. caused the death of Thomas Fred Day, Jr. by cutting him with a knife. Thomas Fred Day, Sr. had not heard from his son Thomas Fred Day, Jr. for several days and numerous attempts by the Day Family to contact Thomas Fred Day, Jr. had failed. On Friday, January 16, 1998 Thomas Fred Day, Sr. went to his son's home at 1707 18th Ave., Phenix City, Russell County, Alabama to check on his son. When no one came to the door, *513 Thomas Day, Sr. entered the home and found the body of his son, Thomas Fred Day, Jr. and he called the police. Police investigators arrived and noted overturned furniture and signs of a struggle as having occurred in the living room of the Day home. Evidence was presented that items were missing from the home including Compact disc records and Thomas Fred Day, Jr.'s automobile.
"Testimony showed that the victim, Thomas Fred Day, Jr. was a handicapped individual having suffered brain damage and permanent damage to one arm from a previous industrial accident. At the time of his death Thomas Fred Day, Jr. had one arm in a cast from a recent operation which was designed to keep his arm immobile. Opinion testimony from the State of Alabama's Forensic pathologist stated that Thomas Fred Day, Jr. died from having his throat cut and that he was probably lying down or sitting at the time that his throat was cut. It was also testified that Thomas Fred Day, Jr. may have been hit or kicked about the head after his throat was cut.
"The same day that the body of Thomas Fred Day, Jr. was found, the Defendant James A. Harrison, Jr. was arrested in Columbus, Georgia in possession of the vehicle owned by Thomas Fred Day, Jr. Testimony was given that James A. Harrison, Jr. attempted to sell Day's vehicle. Evidence was also submitted that compact discs belonging to Thomas Fred Day, Jr. had been pawned by the Defendant, James A. Harrison, Jr. on January 14, 1998. At the time of James A. Harrison Jr.'s arrest in Columbus, Georgia, a knife was removed from his person by Officer Gregory Ballard of the Columbus, Georgia Police Department.
"On the same day of James A. Harrison, Jr.'s arrest, he was interviewed by Officer Kenneth Youngblood of the Phenix City Police Department. Officer Youngblood received a statement from the Defendant, James A. Harrison, Jr. in which he claimed that on January 13, 1998, he was at the home of Thomas Fred Day, Jr., that Fred cursed him, and accused Harrison of trying to rip him off in a drug deal. Harrison then stated that Thomas Fred Day, Jr. punched him in the ribs. James A. Harrison, Jr. then stated that he pulled a knife out of his pocket and swung at Fred cutting Thomas Fred Day, Jr.'s throat. James A. Harrison, Jr. further admitted that the knife seized from him by Officer Ballard was the same knife he used to cut Thomas Fred Day, Jr. in the throat. The Court considered all the testimony and exhibits presented at trial in making its factual finding."
(C.R.193-95.) Additional facts are included, as necessary, throughout this opinion.
The appellant raises some issues on appeal that he did not raise at trial. Although the lack of an objection at trial will not bar our review of an issue in a case involving the death penalty, it will weigh against any claim of prejudice the appellant may raise. See Ex parte Kennedy, 472 So.2d 1106 (Ala.1985). Rule 45A, Ala. R.App. P., provides:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review... whenever such error has or probably has adversely affected the substantial right of the appellant."
"[This] plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 *514 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816, 827 n. 14 (1982)).

I.
The appellant's first argument is that, because the State allegedly did not properly authenticate two videotapes of statements he made to law enforcement officers, the trial court improperly admitted the videotapes into evidence. Because he did not present this argument to the trial court, we review it for plain error. See Rule 45A, Ala. R.App. P.
Rule 901(a), Ala. R. Evid., provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." One method for authenticating evidence is through the testimony of a witness who has knowledge that "a matter is what it is claimed to be." Rule 901(b)(1), Ala. R. Evid.
"The traditional predicate for admission [of a videotape] is established by having a witness to testify that the [videotape]... will accurately reproduce the objects or actions which the witness observed."
Charles W. Gamble, McElroy's Alabama Evidence § 123.06 (5th ed.1996) (footnote omitted).
"[W]hen a qualified and competent witness can testify that the ... medium accurately and reliably represents what the witness sensed at the time in question, then the foundation required is that for the `pictorial communication' theory. Under this theory, the party offering the item must present sufficient evidence to meet the `reliable representation' standard, that is, the witness must testify that the witness has sufficient personal knowledge of the scene or events pictured or the sounds recorded and that the item offered accurately and reliably represents the actual scene or sounds."
Ex parte Fuller, 620 So.2d 675, 678 (Ala. 1993).
Sergeant Kenneth Youngblood of the Phenix City Police Department testified about two statements the appellant made regarding this offense. He identified State's Exhibit # 38 as the videotape of an interview he conducted on January 16, 1998; stated that he had watched the videotape; and added that it fairly and accurately depicted the interview. He identified State's Exhibit # 39 as the videotape of an interview he conducted on January 19, 1998; stated that it accurately depicted what happened during the interview; and added that it had not been altered or changed in any way. Youngblood's testimony that the videotapes accurately depicted the interviews was sufficient to establish the authenticity of the videotapes. Therefore, the videotapes were admissible under the "pictorial communication" theory, and the trial court properly admitted them into evidence. Accordingly, we do not find any plain error in this regard.

II.
The appellant's second argument is that, because the State allegedly did not establish a chain of custody for the two videotapes of statements he made to law enforcement officers, the trial court improperly admitted the videotapes into evidence. We addressed a similar argument in Woods v. State, 548 So.2d 611, 614 (Ala. Crim.App.1989), as follows:
"The appellant argues that the trial court erred in admitting a videotape into evidence ... because, he argues, the proper foundation had not been laid. The appellant contends that the recording should be subject to the same foundational analysis as a tape recording.
*515 He also argues that a proper chain of custody was not established for its introduction. However, this court has determined that video recordings are admissible under the rules for the admission of photographic evidence. Molina v. State, 533 So.2d 701 (Ala.Cr.App.1988).
"`We adopt the "better reasoned rule" that "video recordings are admissible on the same basis as other types of photographic evidence, i.e. admissible when verified by some witness who can state that they are a reliable reproduction of the recorded picture and sound." C. Scott, Photographic Evidence, supra, § 1297 at 98 n. 42.20 (1987 Pocket Part).
"`"....
"`Accordingly, we reaffirm the predicate for admitting videotape [motion picture] evidence announced by our Supreme Court in U.A.W.-C.I.O. v. Russell, [264 Ala. 456, 88 So.2d 175 (1956), aff'd, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958),] and we specifically reject the dicta in Voudrie v. State, 387 So.2d [248] at 256, and cases following it, that have upheld the more stringent seven-pronged predicate for admitting sound recordings....
"`The videotape was thus admissible without a showing of its chain of custody. "[A] proper foundation laid for the accuracy of what the film portrays obviates the need to establish a chain of custody to demonstrate its authenticity." State v. Deering, 291 N.W.2d 38, 41 (Iowa 1980). Accord, Mikus v. United States, 433 F.2d 719, 725-26 (2d Cir.1970); Paramore v. State, 229 So.2d 855, 859 (Fla.1969), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972); Bremer v. State, 18 Md.App. 291, 307 A.2d 503, 535 (1973), cert. denied, 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974) (Videotape of attempted assassination of Governor George Wallace admitted without proving chain of custody of the film).'

"Molina v. State, supra, at 712."
As set forth in Part I of this opinion, Youngblood testified that the videotapes accurately depicted what occurred when he interviewed the appellant. That authentication testimony established that the videotapes were reliable reproductions of the interviews and obviated the need for the State to establish a chain of custody for the videotapes. Accordingly, the appellant's argument is without merit.

III.
The appellant's third argument is that the trial court improperly commented on the voluntariness of the statements he made to law enforcement officers and improperly denied his motion for a mistrial based on that comment. After the videotape of the appellant's first statement had been played for the jury, the State asked to play the second videotape. Because the State indicated that the videotape would be somewhat lengthy, the trial court ordered a recess for lunch before the videotape was played. When the trial resumed after the recess, the State again asked to play the second videotape, and the appellant objected. At that time, the trial court stated:
"All right. The Court would deny your objection. The Court has determined that defense has viewed these tapes in advance and has presented nothing to show that there was anything involuntary in the tapes and has overruled your objection twice previously and will again overrule your objection."
(R. 734.) After the videotape had been played for the jury, the following occurred outside of the presence of the jury:

*516 "THE COURT: We'll let [defense counsel] add to his motion if he'd like to.
"[DEFENSE COUNSEL]: Your Honor, I have previously, before the playing of the tape, interposed an objection renewing my previous objection as to the first tape, and renewed it for the second tape. And the Court rather than making a comment saying that said motion is noted and overruled or just overruled, the Court went out of its way to put on the record that the Court has already ruled on my motion and has found that the tape or the conversation and the tapes were voluntarily given by my client in front of the jury, and that is, we contend, prejudicial to my client because it is the Court's commenting on evidence that is being presented and giving greater weight to this by ruling the Court's already ruled that it was voluntary, but the Court tells the jury that it was freely and voluntarily given, so that if we come back and try at any time to ask the officer if it was freely and voluntarily given, if any promises or hope of reward or anything else was given to the Defendant prior to making any of these statements, then we would be precluded from having our testimony or argument presented to the jury fairly because the Court has already said it has already been ruled that it's a voluntary statement. And I feel like that's an improper commenting on the evidence by the Court, and therefore, we move for a mistrial and we continue with that motion for a mistrial.
"THE COURT: [Court reporter], would you check and see if I stated that the defense has presented no evidence?
"[DEFENSE COUNSEL]: I didn't say that. I don't think the Court said that.
"THE COURT: Well, that's what I'm asking her to check.
"(Requested portion read back by the reporter.)
"THE COURT: The Court finds that [defense counsel] has misstated what the Court has said. The Court did not comment on finding it voluntary other than the defense had presented no evidence. In fact, the Court has given the Defendant an opportunity to object out of the presence of the jury twice to the admission of this tape, once at the suppression hearing and again last night, and in both occasions the State produced a witness which testified that the statements were made knowing[ly] and voluntar[ily] after the Defendant had been advised of his constitutional rights, and the defense failed on both occasions to produce any evidence during the hearings to the contrary. In spite of these two previous objections to the admission of evidence made outside the presence of the jury, the defense counsel chose to wait for the jury to return and made a second objection or a third objection in the presence of the jury. The defense counsel knew the tape was going to be played and waited until the jury came back into the courtroom to make its objection in front of the jury, and the Court made its ruling because the defense made its objection during the presence and made the same rulings it made earlier. Your motion is denied."
(R. 736-38.)
We addressed an argument that was similar to the appellant's in Bryant v. State, 727 So.2d 870, 874 (Ala.Crim.App. 1998), as follows:
"Bryant is due no relief on his assertion that the trial court's comment warranted a mistrial.
"`"The law does not prohibit the trial judge from giving trial counsel his reasons in making certain rulings as to the law applicable to the *517 case.... Bedingfield v. State, [47 Ala. App. 677, 681, 260 So.2d 408, 412 (1972) ].
"`"In 23 C.J.S., Criminal Law § 993, p. 1024, it is said, `Generally, it is not improper comment on the evidence for the judge to explain his ruling on a matter of law, and he may refer to testimony and state its legal effect, in deciding a point raised during trial.'"'

"Hampton v. State, 620 So.2d 99, 103 (Ala.Cr.App.1992), quoting McDonald v. State, 340 So.2d 80, 83 (Ala.Cr.App.), cert. denied, 340 So.2d 84 (Ala.1976). Here, the trial court's comment was made when overruling Bryant's objection to a portion of Crow's testimony, and was offered merely as an explanation of the court's ruling on the objection. Thus, the trial court's remark did not constitute an improper comment on the evidence."
Accordingly, we conclude that the comments about which the appellant complains were not improper comments on the voluntariness of his statements. Rather, the trial court simply stated its reasons for overruling the appellant's objection.
"Furthermore, we note that the trial court instructed the jury that it was the trier of fact and that any ruling that the trial court made was not to be considered evidence. Jurors are presumed to follow the trial court's instructions. Holland v. State, 588 So.2d 543, 549 (Ala.Cr.App.1991). Thus, the judge's instruction to the jury prevented any possible prejudice. Rule 45, Ala. R.App. P."
Bryant, 727 So.2d at 874-75. During its initial instructions to the jury, the trial court stated:
"During the course of the trial, I may rule on objections by the attorneys as to the admissibility of testimony or other evidence. It is the duty of an attorney to make such objections to the offer of evidence which he deems illegal or improper. You must not concern yourselves with the reasons for my rulings since they are controlled and required by rules of law. You are not to speculate as to possible answers to questions which I do not require to be answered. The overruling of objections to such evidence is not intended to indicate the weight to be given such evidence by you. This admitted evidence will be considered along with all the other evidence, and you are to disregard all evidence which may be excluded by the Court.
"An attorney is an officer of the court. It is the attorney's duty to present evidence on behalf of his client, to make such objections as he deems proper, and to fully argue his client's cause. The attorneys' statements and arguments are intended to help you understand the evidence and apply the law. However, their statements are not evidence, and you should disregard any remark, statement or argument which is not supported by the evidence or by the law as given to you by the Court. Likewise, statements made by the Court are not evidence and are not to be so considered by you as evidence."
(R. 389-90.) Subsequently, during its guilt phase jury instructions, the trial court stated:
"[S]tatements made by the Court are not evidence and are not to be considered by you as evidence.
"As the Judge, I am not permitted by law to express my opinion or comment on the effect of the evidence presented to you or the credibility of any witness in the case. Any ruling, statement or expression which may have been made by me during the course of this trial is not to be considered by you as any effort *518 on my part to convey to you any feeling or opinion about the facts in this case or the credibility of any witness."
(R. 1054.) The trial court's instructions were thorough and accurate, and we presume that the jury followed them. Therefore, those instructions eliminated any possible prejudice to the appellant.
Finally, during its oral charge, the trial court explained:
"With regard to any alleged statements made by the Defendant, you may consider all facts and circumstances surrounding the taking of the alleged statement in determining the weight or credibility, if any, that you will give it. In determining the credibility of the statement or the weight to which the statement is properly entitled, the jury shall consider the circumstances under which it was obtained and the way it was supposedly elicited, including the situation and relationships between the parties."
(R. 1061.) Thus, the trial court made it clear to the jury that it was to determine what weight or credibility, if any, to give to the appellant's statements. See Ready v. State, 574 So.2d 894 (Ala.Crim.App.1990).
For these reasons, we do not find that there was any reversible error with regard to the trial court's comments. Therefore, the trial court properly denied the appellant's motion for a mistrial.

IV.
The appellant's fourth argument is that "[t]he trial court improperly excluded evidence that another person committed the crime by refusing to allow testimony concerning a convicted felon seen at the decedent's home the week of his death." (Appellant's brief at p. 7.) Specifically, he contends that the trial court improperly refused to allow him to introduce evidence that would have implied that Timothy Teel committed the offense.
"The United States Supreme Court has held that a defendant, has a right to put on a defense and that that right includes the opportunity to present evidence proving that another person committed the offense for which he has been charged. See Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, this right is not absolute; instead, the trial court will have to consider the admissibility of such evidence in conjunction with other legitimate interests involved in the trial process. Chambers, 410 U.S. at 295, 93 S.Ct. 1038; see also Guam v. Ignacio, 10 F.3d 608 (9th Cir.1993). As a result, the trial court is presented with a balancing test in order to determine whether the evidence of a third party's culpability is properly admissible:
"`The court must weigh the defendant's "strong interest in presenting exculpatory evidence" against the state's interest "in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party."'
"United States v. Johnson, 904 F.Supp. 1303, 1311 (M.D.Ala.1995) (citations omitted). In weighing those interests, the federal courts have required the defendant to show that the evidence he is offering is probative and not merely speculation that would confuse the jury:
"`To satisfy this balancing test, there must be "some showing of a nexus between the other party and the particular crime with which a defendant is charged." Of course, this nexus must be substantialthat is, probativeand not tenuous or merely speculative.'
"Id. (citations omitted).
*519 "Like the federal courts, Alabama courts have long recognized the right of a defendant to prove his innocence by presenting evidence that another person actually committed the crime. See Ex parte Walker, 623 So.2d 281 (Ala.1992); Thomas v. State, 539 So.2d 375 (Ala. Crim.App.1988); Green v. State, 258 Ala. 471, 64 So.2d 84 (1953); Underwood v. State, 239 Ala. 29, 193 So. 155 (1939); Orr v. State, 225 Ala. 642, 144 So. 867 (1932); Houston v. State, 208 Ala. 660, 95 So. 145 (1923); Tennison v. State, 183 Ala. 1, 62 So. 780 (1913); McGehee v. State, 171 Ala. 19, 55 So. 159 (1911); McDonald v. State, 165 Ala. 85, 51 So. 629 (1910). In addition, Alabama courts have also recognized the danger in confusing the jury with mere speculation concerning the guilt of a third party:
"`It generally is agreed that the defense, in disproving the accused's own guilt, may prove that another person committed the crime for which the accused is being prosecuted.... The problem which arises in the application of this general rule, however, is the degree of strength that must be possessed by the exculpatory evidence to render it admissible. The task of determining the weight that must be possessed by such evidence of another's guilt is a difficult one.'
"Charles W. Gamble, McElroy's Alabama Evidence § 48.01(1) (5th ed.1996). To remove this difficulty, this Court has set out a test intended to ensure that any evidence offered for this purpose is admissible only when it is probative and not merely speculative. Three elements must exist before this evidence can be ruled admissible: (1) the evidence `must relate to the "res gestae" of the crime'; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence `would have to be admissible if the third party was on trial.' See Ex parte Walker, 623 So.2d at 284, and Thomas, 539 So.2d at 394-96."
Ex parte Griffin, 790 So.2d 351, 353-54 (Ala.2000).
During the trial, the defense elicited some testimony about Timothy Teel. Sheila Teel Hanchey, who lived across the street from the victim, testified that Timothy Teel was her ex-husband. She stated that Teel was not at her house during the week the victim was killed and that she had not seen Teel since mid-1997. She stated that Teel owed her approximately $78,000 in child support and that the district attorney's office had tried to locate him to collect the money. However, they had not succeeded in locating him. Finally, she stated that, sometime in 1997, she had had a conversation with Anna Jernigan about Teel being present in the neighborhood.
Anna Jernigan, who lived next door to the victim, also testified for the defense. She testified that she saw Teel and the appellant earlier during the week the victim was killed. Specifically, she testified that she saw Teel and the appellant walk off of Sheila Hanchey's porch and stand in front of Sheila Hanchey's and the victim's houses talking. Subsequently, Hanchey showed her a picture of Teel, told her he had just gotten out of jail, and asked her to call law enforcement authorities if she saw him in the neighborhood. Jernigan stated that she did not see Teel in the neighborhood again.
The appellant argues that the trial court should also have allowed him to introduce evidence about Teel's criminal history. However, he did not make an offer of proof as to what he expected to show about Teel's alleged criminal history. See Rule 103(a)(2), Ala. R. Evid.; Knight v. State, 710 So.2d 511 (Ala.Crim.App.1997). *520 Therefore, we review this contention for plain error. See Rule 45A, Ala. R.App. P.
In this case, the evidence about Teel's criminal history did not relate to the res gestae of the offense, and it would not have exonerated the appellant. Furthermore, because we do not know any details about Teel's alleged criminal history, we cannot determine whether such evidence would have been admissible if Teel had been on trial. Teel's connection to the offense was simply too attenuated, and the appellant's theory that Teel committed the offense was too speculative. It would have required the jury to conclude that the appellant did not have anything to do with the murder even though he had possession of several items of the victim's property shortly after the victim was killed. Finally, the tendency of evidence about Teel's criminal history to mislead the jury substantially outweighed its probative value in this case. See Charles Gamble, McElroy's Alabama Evidence, § 21.01(9) (5th ed.1996). Accordingly, the trial court properly excluded evidence about Teel's criminal history.

V.
The appellant's fifth argument is that the trial court improperly admitted into evidence a knife, which was State's Exhibit # 24, for which the State allegedly had not established a proper chain of custody. Specifically, he contends that there was a missing link in the chain of custody because Detective Pruitt, who placed the knife in an evidence bag and marked it, did not testify at trial.
"In Ex parte Holton, this Court examined the evidentiary foundation required to authenticate and identify demonstrative evidence:
"`The chain of custody is composed of "links." A "link" is anyone who handled the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: "(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition." Imwinklereid, The Identification of Original, Real Evidence, 61 Mil. L.Rev. 145, 159 (1973).
"`If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a "missing" link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the "link," as to one or more criteria or as to one or more links, the result is a "weak" link. When the link is "weak," a question of credibility and weight is presented, not one of admissibility.'
"[Ex parte] Holton, 590 So.2d [918], 920 [(Ala.Crim.App.1991)]; see also Ex parte Cook, 624 So.2d 511, 513 (Ala. 1993)."
Kennedy v. State, 690 So.2d 1222, 1223-24 (Ala.1996). "`The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence.' " Jones v. State, 616 So.2d 949, 951 (Ala.Crim.App.1993) (quoting Williams v. State, 505 So.2d 1252, 1253 (Ala.Crim.App.1986), aff'd, 505 So.2d 1254 (Ala.1987)).

*521 "`"Tangible evidence of crime is admissible when shown to be "in substantially the same condition as when the crime was committed." And it is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved "[unless the accused makes] a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering." If, however, that condition is met, the Government must establish that acceptable precautions were taken to maintain the evidence in its original state.
"`"`The undertaking on that score need not rule out every conceivable chance that somehow the [identity] or character of the evidence underwent change. "[T]he possibility of misidentification and adulteration must be eliminated," we have said, "not absolutely, but as a matter of reasonable probability." So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in the light of surrounding circumstances.'"'
"Moorman v. State, 574 So.2d 953, 956-7 (Ala.Cr.App.1990)."
Blankenship v. State, 589 So.2d 1321, 1324-25 (Ala.Crim.App.1991). Additionally, "evidence that an item has been sealed is adequate circumstantial evidence to establish the handling and safeguarding of the item." Lane v. State, 644 So.2d 1318, 1321 (Ala.Crim.App.1994). Finally, "`[a]ny conflict in the evidence concerning the chain of custody is addressed to the weight of the proffered physical exhibit as opposed to its admissibility.'" W.L.L. v. State, 649 So.2d 1335, 1340 (Ala.Crim.App. 1994) (quoting Joseph A. Colquitt, Alabama Law of Evidence § 9.1(c) (1990)).
Officer Gregory Ballard of the Columbus, Georgia, Police Department stopped the victim's vehicle, which the appellant was driving, and patted down the appellant. While he was doing so, he removed a hunting knife from the appellant's pants pocket and placed it on the trunk of his patrol vehicle. Ballard testified that Officer Wommack brought the officers a plastic bag, that Officer Dunaway placed the knife in the plastic bag, and that Detective Pruitt took possession of the knife when he arrived at the scene. Ballard identified State's Exhibit # 24 as the knife he recovered from the appellant. He stated that he did not alter the knife in any way and that it appeared to be in substantially the same condition as when he recovered it from the appellant.
Sergeant Kenneth Youngblood of the Phenix City Police Department testified that he observed the knife on the trunk of Ballard's vehicle. He also testified that, after he arrived at the Columbus Police Department, Detective Pruitt gave him the plastic bag that had the knife in it. He further testified that, later that evening, he gave the bag that had the knife in it to Craig Bailey of the Alabama Department of Forensic Sciences. Finally, Youngblood identified State's Exhibit # 24 as the knife he had observed and stated that it appeared to be in the same or substantially the same condition as when he received it from Pruitt.
Craig Bailey, a forensic scientist employed by the Alabama Department of Forensic Sciences, testified that he received a knife from Sergeant Youngblood. He then placed the knife in a bag and subsequently turned the knife over to Mike Hitchcock. He stated that he did not alter or change the knife in any way. Finally, he identified State's Exhibit #24 as a knife he received from Sergeant Youngblood, and he stated that it appeared to be in substantially *522 the same condition as when he received it.
Michael Hitchcock, a forensic biologist and drug chemist employed by the Alabama Department of Forensic Sciences, testified that he received a knife from Craig Bailey. He identified State's Exhibit # 24 as that knife and stated that it appeared to be in substantially the same condition as when he received it. He conducted a test that showed that there was a component of blood on the knife. However, the sample was not sufficient to allow for further testing.
Sergeant Barbara LaGrand, the property and evidence custodian for the Phenix City Police Department, testified that, on January 5, 2001, she received State's Exhibit # 24 from the Alabama Department of Forensic Sciences. She then returned it to the Phenix City Police Department and secured it in the property and evidence division, where it remained until she turned it over to the district attorney's office. She stated that she did not alter it in any way and that it appeared to be in substantially the same condition as when she received it.
The State identified each link in the chain of custody for the knife, and it presented evidence about the receipt, safeguarding, and disposition of the knife by each link. Although Detective Pruitt did not testify about his handling of the knife, the State presented circumstantial evidence about his receiving, safeguarding, and disposing of the knife. Therefore, the absence of testimony by Pruitt constituted, at most, a weak link in the chain of custody, rather than a missing link, which presented a question of weight and credibility rather than admissibility.
Furthermore, Ballard identified the knife, which was State's Exhibit # 24, as the knife he recovered from the appellant.
"Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
§ 12-21-13, Ala.Code 1975. Therefore, any question as to the adequacy of the safeguarding and handling of the knife did not go to its admissibility. Rather, it went to the weight the jury would assign to the knife.
For these reasons, the appellant's argument about the chain of custody for the knife is without merit. Accordingly, the trial court properly admitted the knife into evidence.

VI.
The appellant's sixth argument is that "[t]he trial court reversibly erred by failing to dismiss the indictment, which was impermissibly vague and deprived [him] of adequate notice of the charges against him." (Appellant's brief at p. 15.) Specifically, he contends that the indictment was deficient because it did not "specify a time of death or a time in which [he] purportedly committed these acts nor does it specify the time at which the theft occurred"; because it did not describe "any of the facts or circumstances of the crime"; because it did not "set forth particular acts or the particular time when the acts occurred or where the property was taken from; nor [did] it aver other evidence of theft"; and because it did not *523 "state an aggravating circumstance that would make the charges against [him] a capital offense." (Appellant's brief at pp. 15, 16-17, 18.)
The indictment alleged that the appellant
"did intentionally cause the death of Thomas Fred Day, Jr. by cutting or stabbing him with a knife or other sharp instrument, a further and better description being otherwise unknown to the Grand Jury, and [the appellant] caused said death during the time that [the appellant] was in the course of committing a theft of property, the property of Thomas Fred Day, Jr., by the use of force against the person of Thomas Fred Day, Jr., with intent to overcome his physical resistance or physical power of resistance, while the said [appellant] was armed with a deadly weapon, a knife or other sharp instrument, a further and... better description being otherwise unknown to the Grand Jury, in violation of Section 13A-5-40(a)(2) of the Code of Alabama, 1975, as amended, and against the peace and dignity of the State of Alabama."
(C.R.12.)
"The following are capital offenses:
"....
"(2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant."
§ 13A-5-40(a), Ala.Code 1975.
"A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
"(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another."
§ 13A-8-41(a), Ala.Code 1975.
"A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
§ 13A-8-43(a), Ala.Code 1975. Rule 13.2, Ala. R.Crim. P., provides, in pertinent part:
"(a) In General. The indictment or information shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment.
"(b) Charging the Offense. The indictment or information shall state for each separate offense, other than lesser included offenses, the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.
"....
"(d) Unnecessary Allegations. An indictment or information which is in conformity with sections (a) and (b) shall be sufficient. The indictment or information need not contain a formal commencement, a formal conclusion, or any other matter not necessary to the statement of facts, nor need it negative any defense or affirmative defense contained in any statute creating or defining the offense *524 charged. Presumptions of law and matters of which judicial notice is taken need not be stated. It is not necessary to state the precise time or date at which or on which the offense is alleged to have been committed, or the place where the offense is alleged to have been committed unless the time or place is a material element of the offense. Unnecessary allegations may be disregarded as surplusage, and, on motion of the defendant, shall be stricken by the court if prejudicial or prolix."
(Emphasis added.) Furthermore,
"[t]his Court in Seawright v. State, 479 So.2d 1362, 1368 (Ala.Cr.App.1985), ... stated:
"`Prior to adoption of the present robbery statutes, there was no statutory robbery provision in this state and the common law prevailed. See Williams v. State, 48 Ala.App. 737, 267 So.2d 526 (1972). "The criminal code definition of robbery has thus altered the common law definition. When robbery was made a statutory offense, the test for the sufficiency of a robbery indictment was changed. The indictment is judged by the statutory language and elements instead of the former common law elements." Smith v. State, 446 So.2d 68, 72 (Ala. Crim.App.1984).
"`In Grace v. State, 431 So.2d 1331, 1333 (Ala.Crim.App.1982), this court stated:
"`"Common law robbery required a `taking' of property from the person of another. Wilson v. State, 268 Ala. 86, 105 So.2d 66 (1958), although the amount of value of the property taken was immaterial, Sanders v. State, 289 Ala. 224, 266 So.2d 802 (1972); Harris v. State, 44 Ala.App. 449, 212 So.2d 695 (1968).
"`"The present robbery statutes, however, do not require a `taking' of property, Marvin v. State, 407 So.2d 576 (Ala.Cr.App.1981); Ala.Code §§ 13A-8-40 through 13A-8-44 (1975) (Commentary), so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. The operative words of the current robbery statute are `in the course of committing a theft,' which includes an attempted theft, Marvin v. State, supra, rather than the common law element of an actual `taking from the person.'" (Emphasis added.)'"
Woods v. State, 789 So.2d 896, 906 (Ala. Crim.App.1999), aff'd, 789 So.2d 941 (Ala. 2001).
"We additionally note that § 13A-5-40(a)(2), Ala.Code 1975, proscribes an attempted robbery as well as a completed theft; therefore, even if there had been no proof at trial that Melson had actually stolen any property from the victims, his capital convictions for murder committed during a robbery in the first degree would still be proper. See Johnson v. State, 473 So.2d 607, 611 (Ala.Cr.App.1985). Because the present robbery statutes do not require a `taking' of property, the indictment need not even allege an actual theft to constitute the offense. Gainey v. State, 647 So.2d 37, 38 (Ala.Cr.App.1994)."
Melson v. State, 775 So.2d 857, 867 (Ala. Crim.App.1999), aff'd, 775 So.2d 904 (Ala. 2000). Finally,
"we held in Bush v. State, 695 So.2d 70, 87 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997), that § 13A-5-49, Ala.Code 1975, puts a capital defendant on notice of the aggravating circumstances against which he might be required to defend. As we *525 stated in Bush, `[t]his statutory notice satisfies constitutional requirements.' Id."
Dunaway v. State, 746 So.2d 1021, 1039 (Ala.Crim.App.1998), aff'd, 746 So.2d 1042 (Ala.1999). Thus, the indictment was not required to be as specific as the appellant contends.
"`An indictment which follows the language of a statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense.' Copeland v. State, 455 So.2d 951, 956 (Ala.Cr.App.), cert. denied, 455 So.2d 956 (Ala.1984) (citations omitted) (quoted in Garrison v. State, 521 So.2d 997, 1001 (Ala.Cr.App.1986))."
McLemore v. State, 562 So.2d 639, 644 (Ala.Crim.App.1989). The indictment against the appellant substantially followed the language of §§ 13A-5-40(a)(2), 13A-8-41(a), and 13A-8-43(a), Ala.Code 1975. Therefore, it was not vague, and it gave the appellant notice of the charge against him. Accordingly, the appellant's argument is without merit.

VII.
The appellant's seventh argument is that execution by electrocution "violates the Eighth Amendment." (Appellant's brief at p. 21.) In Act No. 2002-492, Ala. Acts 2002, which becomes effective on July 1, 2002, the Alabama Legislature modified Alabama law to provide for execution by lethal injection unless the person elects to be executed by electrocution. Therefore, the appellant's arguments about execution by electrocution are moot.

VIII.
Pursuant to § 13A-5-53, Ala.Code 1975, we are required to address the propriety of the appellant's conviction and sentence of death. The appellant was indicted for and convicted of capital murder because he committed a murder during the course of a robbery. See § 13A-5-40(a)(2), Ala.Code 1975.
The record does not reflect that the sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Ala.Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. Specifically, it found that one aggravating circumstance existedthe appellant committed the capital offense while he was engaged in the commission of a robbery. See § 13A-5-49(4), Ala.Code 1975. The trial court found that one statutory mitigating circumstance existedthe appellant did not have a significant history of prior criminal activity. See § 13A-5-51(1), Ala.Code 1975. It also found that the following nonstatutory mitigating circumstances existed: 1) the appellant was raised in a dysfunctional family and 2) the appellant committed the offense while he was under the influence of cocaine. The sentencing order shows that the trial court weighed the aggravating and mitigating circumstances and correctly sentenced the appellant to death. The record supports its decision, and we agree with its findings.
Section 13A-5-53(b)(2), Ala.Code 1975, requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's sentence of death. After independently weighing the aggravating and mitigating circumstances, we find that the death sentence is appropriate.
As required by § 13A-5-53(b)(3), Ala. Code 1975, we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalty imposed in similar cases. The appellant committed a murder during the *526 course of a robbery. Similar crimes are being punished by death throughout this state. See Gaddy v. State, 698 So.2d 1100 (Ala.Crim.App.1995), aff'd, 698 So.2d 1150 (Ala.1997); Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997); Payne v. State, 683 So.2d 440 (Ala.Crim.App.1995), aff'd, 683 So.2d 458 (Ala.1996); Windsor v. State, 683 So.2d 1027 (Ala.Crim.App.1994), aff'd, 683 So.2d 1042 (Ala.1996); Taylor v. State, 666 So.2d 36 (Ala.Crim.App.), opinion extended after remand, 666 So.2d 71 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995); Peoples v. State, 510 So.2d 554 (Ala.Crim.App.1986), aff'd, 510 So.2d 574 (Ala.1987). Therefore, we find that the sentence was neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights, and we have not found any. See Rule 45A, Ala. R.App. P.
For the above-stated reasons, we affirm the appellant's conviction and sentence of death.
AFFIRMED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.

On Application for Rehearing
BASCHAB, Judge.
On May 31, 2002, this court affirmed the appellant's conviction for the capital offense of robbery-murder and his sentence of death. On June 24, 2002, while the case was pending on the appellant's application for a rehearing, the United States Supreme Court released its decision in Ring v. Arizona, 536 U.S. 584, 112 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This court then ordered the parties to submit supplemental briefs addressing the impact of Ring on the appellant's sentence of death. The appellant and the State submitted supplemental briefs in response to that order.
The appellant argues that "[t]he Sixth Amendment requires that all facts upon which a death penalty may be imposed must be decided by the jury not a judge." (Appellant's supplemental brief at p. 4.) Specifically, he contends that "[t]he Ring decision determined that the Sixth Amendment to the United States Constitution requires the ... jury to determine whether `Aggravating Circumstances' exist and if so they must also determine if those aggravating circumstances outweigh `Mitigating Circumstances' in order to justify imposition of the death penalty." (Appellant's supplemental brief at p. 2.) In Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), the Alabama Supreme Court addressed and rejected similar contentions as follows:
"It is true that under Alabama law at least one statutory aggravating circumstance under Ala.Code 1975, § 13A-4-49, must exist in order for a defendant convicted of a capital offense to be sentenced to death. See Ala.Code 1975, § 13A-5-45(f) (`Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole.'); Johnson v. State, 823 So.2d 1, 52 (Ala.Crim.App.2001) (holding that in order to sentence a capital defendant to death, the sentencer `"must determine the existence of at least one of the aggravating circumstances listed in [Ala. Code 1975,] § 13A-5-49"` (quoting Ex parte Woodard, 631 So.2d 1065, 1070 (Ala.Crim.App.2001))). Many capital offenses listed in Ala.Code 1975, § 13A-5-40, include conduct that clearly corresponds to certain aggravating circumstances found in § 13A-5-49:
"`For example, the capital offenses of intentional murder during a rape, § 13A-5-40(a)(3), intentional murder *527 during a robbery, § 13A-5-40(a)(2), intentional murder during a burglary, § 13A-5-40(a)(4), and intentional murder during a kidnapping, § 13A-5-40(a)(1), parallel the aggravating circumstance that "[t]he capital offense was committed while the defendant was engaged ... [in a] rape, robbery, burglary or kidnapping," § 13A-5-49(4).'
"Ex parte Woodard, 631 So.2d at 1070-71 (alterations and omission in original).
"Furthermore, when a defendant is found guilty of a capital offense, `any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing.' Ala.Code 1975, § 13A-5-45(e); see also Ala.Code 1975, § 13A-5-50 (`The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.'). This is known as `double-counting' or `overlap,' and Alabama courts `have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense.' Ex parte Trawick, 698 So.2d 162, 178 (Ala.1997); see also Coral v. State, 628 So.2d 954, 965 (Ala.Crim. App.1992).
"Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was `proven beyond a reasonable doubt.' Ala.Code 1975, § 13A-5-45(e); Ala.Code 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus, in Waldrop's case, the jury, and not the trial judge, determined the existence of the `aggravating circumstance necessary for imposition of the death penalty.' Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Therefore, the findings reflected in the jury's verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring and Apprendi require.
"....
"Contrary to Waldrop's argument, the weighing process is not a factual determination. In fact, the relative `weight' of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof. As the United States Court of Appeals for the Eleventh Circuit noted, `While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard ... the relative weight is not.' Ford v. Strickland, 696 F.2d 804, 818 (11th Cir.1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which `the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence.' Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. See Harris v. Alabama, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (rejecting `the notion that "a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required" *528 (quoting Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)) and holding that `the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer').
"Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. See California v. Ramos, 463 U.S. 992, 1008, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (`Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment.'); Zant v. Stephens, 462 U.S. 862, 902, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in the judgment) (`sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does').
"In Ford v. Strickland, supra, the defendant claimed that `the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment.' Ford, 696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that `aggravating and mitigating circumstances are not facts or elements of the crime. Rather, they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed.' 696 F.2d at 818. Furthermore, in addressing the defendant's claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant's argument
"`seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party.'
"696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit's rationale. See Lawhorn v. State, 581 So.2d 1159, 1171 (Ala.Crim.App.1990)(`while the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party'); see also Melson v. State, 775 So.2d 857, 900-901 (Ala.Crim.App.1999); Morrison v. State, 500 So.2d 36, 45 (Ala. Crim.App.1985).
"Thus, the determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances."
(Footnotes omitted.)
In this case, the trial court found that one aggravating circumstance existedthe *529 appellant committed the capital offense while he was engaged in the commission of a robbery. See § 13A-5-49(4), Ala.Code 1975. Because the jury convicted him of the capital offense of robbery-murder, that statutory aggravating circumstance was proven beyond a reasonable doubt. Therefore, in this case, the jury, and not the judge, determined the existence of the "aggravating circumstance necessary for imposition of the death penalty." Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Furthermore, "Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances." Waldrop, 859 So.2d at 1190. Therefore, the appellant's arguments are without merit.
APPLICATION FOR REHEARING OVERRULED.[*]
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
NOTES
[*] Note from the reporter of decisions: On August 23, 2002, the Court of Criminal Appeals overruled Harrison's application for rehearing, without opinion. On that same date, the Court issued an order "setting aside ruling on application for rehearing and restoring cause to active docket pending decision on appellant's application for rehearing" and placed the case on rehearing ex mero motu. On June 27, 2003, the Supreme Court denied certiorari review, without opinion (1020804).