The appellant, Michael A. Withee, was indicted for murder. After being denied youthful offender status, he was found guilty of the lesser included offense of manslaughter and was sentenced to the maximum *Page 686 
sentence of 20 years incarceration. He raises five issues in this appeal.
 I.
The appellant first contends that the trial court violated the Confrontation Clause of the Sixth Amendment because, he says, it improperly allowed a forensics expert to testify as to another forensics expert's autopsy findings and conclusions when no showing was made that the expert who performed the autopsy was unavailable to testify. Dr. Gregory Wanger of the Department of Forensic Sciences performed the autopsy of the deceased, Aaron Parker. However, at the appellant's trial, Dr. Leroy Riddick, a physician and custodian of records with the Department of Forensic Sciences testified to Dr. Wanger's findings and conclusions. The trial court overruled the appellant's objections to Dr. Riddick's testimony. The appellant argues that the State's admission of the autopsy report through Dr. Riddick's testimony violated his right to confront witnesses against him because he was unable to cross-examine Dr. Wanger regarding his findings and conclusions.
In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531,65 L.Ed.2d 597 (1980), the United States Supreme Court established a "two-track" analysis for determining whether certain testimony violates the Confrontation Clause, focusing on the necessity and reliability of the testimony. This Court discussed that standard in Grantham, v. State, 580 So.2d 53, 55-56 (Ala.Cr.App. 1991):
 `"`In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court "announced that confrontation clause analysis should proceed case-by-case under a two-track approach that tests the necessity and reliability of the contested testimony." United States v. Perez, 658 F.2d 654 at 660 (9th Cir. 1981) (citing Roberts, 448 U.S. at 65-66, 100 S.Ct. at 2538-2539). The first consideration is the rule of necessity" established by the sixth amendment. Roberts, 448 U.S. at 65, 100 S.Ct. at 2538. "In the usual case . . . the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Id. This necessity requirement is not "absolute." Perez, 658 F.2d at 661. The government is not required to produce a seemingly unavailable witness when the "utility of trial confrontation [is] remote." Roberts, 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7. Furthermore, "[t]estimony that is neither `crucial' to the prosecution nor `devastating' to the defendant might not be subject to the necessity requirement." Perez, 658 F.2d at 661 (citing Dutton v. Evans, 400 U.S. 74 at 87, 89, 91 S.Ct. 210 at 219, 220, 27 L.Ed.2d 213 (1970)). If the government establishes the unavailability of the witness, Roberts then requires that the declarant's statement bear adequate "indicia of reliability." Roberts, 448 U.S. at 66, 100 S.Ct. at 2539.'
 United States v. McClintock, 748 F.2d 1278, 1291-92
(9th Cir. 1984), cert. denied, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). Accord, Pickett v. Bowen, 626 F. Supp. 81, 84-85 (M.D.Ala. 1985), affirmed, 798 F.2d 1385 (11th Cir. 1986)."
According to the appellant, the state failed to satisfy the "necessity" prong of the Roberts test. There was no evidence that Dr. Wanger was "unavailable" for the trial, other than a vague reference by Dr. Riddick that Dr. Wanger was "at the FBI academy." In order to show unavailability, the state must show that it has made a "good-faith effort" to secure the witness's testimony at trial. Roberts, 448 U.S. at 74, 100 S.Ct. at 2543, citing Barber v. Page, 390 U.S. 719, 724-725, 88 S.Ct. 1318,1322, 20 L.Ed.2d 255 (1968). Because no such showing was made, the appellant claims that the state failed to show that admitting the autopsy report through Dr. Riddick was necessary and, he argues, therefore violated his Sixth Amendment right to confrontation.
Although the State failed to show that Dr. Wanger was unavailable, it was not required to do so under the Roberts test, considering the autopsy report in the context of the evidence as a whole in this case. According to Roberts, the State is not required to produce a "seemingly unavailable" witness, *Page 687 
such as Dr. Wanger, when that witness would testify to evidence that is neither "crucial" to the State nor "devastating" to the defense. United states v. Perez, 658 F.2d 654, 661 (9th Cir. 1981). Peripheral matters are not significant enough to raise confrontational concerns. A review of the evidence in this case reveals that the autopsy report was peripheral, neither crucial to the state's case nor devastating to the defendant.
The evidence at trial tended to show that the appellant gave a tape-recorded statement to officers at the Escambia County sheriff's office a little more than a week after Parker had been killed. In this statement the appellant admitted shooting Parker, but claimed he did so in self-defense. According to the appellant, at 3:00 a.m. on January 2, 1996, Parker, who the appellant said was "tripping on LSD," and the appellant got into an argument over unpaid bills. The appellant said that he and Parker had previously agreed that Parker would live in the appellant's house while the appellant was in Colorado if Parker would pay the utilities for that period. However, when the appellant confronted Parker about the bills not having been paid, the two got into a shoving match. The appellant said that Parker, who was sitting on a couch began to pull a gun on him. However, the appellant said that he then grabbed a gun from a shelf and shot Parker once in the top of the head. The appellant then buried Parker on the neighboring property.
The appellant presented considerable evidence supporting his self-defense claim. According to the appellant's statement, Parker had previously threatened to kill him as well as to kill his girlfriend and baby. Steve Carr, a friend of the appellant's who suffered from cerebral palsy, testified at trial that Parker once held a gun in his face and said that he was "gonna shoot his crippled ass." Furthermore, the appellant's mother testified at trial that her son was terrified of Parker, describing an incident when she went to her son's house and found him crying in his truck, which was parked in his driveway. According to the appellant's mother, the appellant was too scared to enter his own house because Parker was inside. She further testified that the appellant had tried to talk with at least four different law enforcement agencies regarding his fear for his own safety when Parker periodically stayed at his house. Because they were told that nothing could be done until Parker did something to somebody, the appellant's family decided that the appellant should move to Colorado to live with his uncle. Upon the appellant's return to see his child during the Christmas holidays and to arrange to move to Colorado permanently, the incident leading to Parker's death occurred.
The State, however, presented critical evidence tending to counter the appellant's self-defense claim. Ginger Alexander, the appellant's former girlfriend and the mother of his child, testified that the appellant had supported Parker and had become frustrated that Parker was "mooching" off of him. She testified that at three different times before Parker's death, the appellant told her that he was going to kill Parker. Heather Alexander, Ginger Alexander's sister, testified that after Parker's death the appellant confided in her that he had killed Parker and buried him in the yard. According to Heather Alexander, the appellant told her that he and Parker had begun fighting, that Parker "had been calling Ginger a bitch and saying that she controlled [the appellant]" and that he refused to pay the bills. She said that the appellant told her that after a shoving match, the appellant went into his room to cool down but was unable to do so. The appellant told her that while Parker was sitting on the couch, he grabbed his gun and came up behind him, shooting him in the head.
Although the autopsy report was relevant to the critical issue of the case, i.e., whether the appellant shot Parker in self-defense, it cannot be said to be "crucial" to the State or "devastating" to the defense. The position of the body and the path of the bullet were relevant to the self-defense issue. However, the autopsy report as presented through Dr. Riddick's testimony was not a factor in the jury's rejection of the appellant's self-defense theory. In fact, Dr. Riddick's testimony appeared to support the appellant's theory. Dr. Riddick testified that the autopsy could not show the position of the weapon or body upon the impact of the bullet, but that the *Page 688 
gunshot wound was at least of a "distant range." This conclusion seems to support the appellant's version that he shot Parker from across the room in self-defense rather than the state's version that he sneaked up behind him and shot him in the back of the head at close range.
The cases relied upon by the appellant, Barnes v. State,704 So.2d 487 (Ala.Cr.App. 1997), and Grantham v. State, 580 So.2d 53
(Ala.Cr.App. 1991), are distinguishable from this case. The evidence introduced in those cases was "devastating" to the defense. In Barnes, Dr. Wanger testified regarding a vaginal swab taken by Dr. Riddick during an autopsy. Dr. Riddick was, like Dr. Wanger in the present case, merely "seemingly unavailable," traveling to conference in California. Unlike the present case, the vaginal swab taken from the victim was critical to the state's case, shoting almost conclusively that Barnes had raped and murdered the victim when Barnes denied, having committed the rape-murder. Barnes, 704 So.2d at 496. In Grantham, the State's presentation of a toxicology report without the testimony of the toxicologist preparing the report was devastating to the defense because it was the only evidence showing that the material seized from Grantham was in fact marijuana. Grantham, 580 So.2d at 58.
Even if the introduction of the autopsy report without Dr. Wanger's testimony were error, the error would be harmless. As stated in Grantham, 580 So.2d at 58 (citing Delaware v. VanArsdall, 475 U.S. 673, 680-84, 106 S.Ct. 1431, 1435-38,89 L.Ed.2d 674 (1986)), "Violations of the confrontation clause, like many other constitutional errors, are subject to a harmless error or analysis." The evidence presented by the State, exclusive of the autopsy report, was sufficient on which to base a finding that the appellant was guilty of manslaughter beyond a reasonable doubt. Admission of the autopsy report through Dr. Riddick's testimony did not affect the jury's conclusion that the appellant committed manslaughter. Therefore, we find that the admission of the report, even if it was error, was harmless beyond a reasonable doubt.
 II.
The appellant next contends that the trial court committed reversible error when it refused to instruct the jury on the "lesser included offense" of abuse of a corpse. Although the appellant requested such an instruction, the record indicates that, rather than objecting, he acquiesced to the trial court's refusal to give such an instruction. The exchange between the trial court and the appellant's counsel proceeded as follows:
 "THE COURT: Well, what — well, that's not a lesser included offense of murder.
 "MR. RAINES [defense counsel]: No sir. Generally speaking, I don't think that it is, Your Honor. But it may be a lesser [included offense] under the facts that are presented in abuse of a corpse.
 "THE COURT: That's a separate and distinct crime. The — he's not even charged with that.
"MR. RAINES: That's correct, judge.
 "THE COURT: Well, I'm going to refuse the request that the jury be charged on abuse of a corpse as a lesser included offense of murder.
"MR. RAINES: Okay, sir."
The appellant never objected to the trial judge's failure to give a charge on abuse of a corpse as a lesser included offense as to murder. A defendant may make a clear objection at, the charge conference in lieu of objecting at the close of the oral instructions. Molton v. State, 651 So.2d 663, 666 (Ala.Cr.App. 1994). However, the above exchange does not clearly place the trial judge on notice as to the appellant's specific reasons for his objection. Id. Therefore, the issue has not been preserved for our review.
 III.
The appellant argues that the State failed to present sufficient evidence to sustain his manslaughter conviction. In ruling that the evidence was sufficient we must determine that "viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt." Wesson v. State,644 So.2d 1302 (Ala.Cr.App. *Page 689 
1994), quoting Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211,2216, 72 L.Ed.2d 652 (1982).
As discussed in Part I of this opinion, the appellant admitted to killing Parker, but claimed it was in self-defense. However, the state presented evidence from which a jury could find beyond a reasonable doubt that the appellant did not kill Parker in self-defense, but rather recklessly or out of heat-of-passion. Section 13A-6-3(a), Ala. Code 1976, provides:
"A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He cause the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he caused the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
Furthermore, § 13A-2-2(3), Ala. Code 1975, defines "recklessly" as follows:
 "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
Ginger Alexander testified that the appellant told her before Parker's death that he intended to kill him. Furthermore, Heather Alexander testified that the appellant told her that he and Parker had been in a shoving match, that he went to his room but was unable to cool down, and then retrieved his gun and shot Parker as he was sitting on the couch. This evidence was sufficient to convict the appellant of reckless or heat of passion manslaughter. We stated in Robinson v. State,441 So.2d 1045, 1047 (Ala.Cr.App. 1983):
 "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or was guilty of nothing at all."
If the testimony of the Alexander sisters is to be believed, then the appellant acted either intentionally or recklessly. Furthermore, Heather Alexander's testimony regarding the appellant's confession to her appears to indicate that the appellant was under the heat of passion when he shot Parker. This Court may not substitute its own conclusions as to the credibility of witnesses or the weight of the evidence for that of the jury's conclusions. Zumbado v. State, 615 So.2d 1223
(Ala.Cr.App. 1993).
 IV.
The appellant contends that the trial court improperly admitted a written transcript of his taped confession in violation of Rule 1002, Ala.R.Evid. Rule 1002, commonly known as the "best evidence rule," provides:
 "To prove the content of a writing, the original writing is required, except as otherwise provided by statute, these rules, or by other rules applicable in the courts of this state."
However, the Alabama Supreme Court has held that the best evidence rule does not apply to tape recordings. Ex parteO'Daniel, 515 So.2d 1250, 1252 (Ala. 1987). The advisory committee notes to Rule 1001(1), Ala.R.Evid., which defines "writings" clearly states that tape recordings do not fall under the definition of "writings" and are therefore not covered by Rule 1002. Therefore, the admission of the written transcript was not error.
 V.
The appellant finally contends that the trial court erred by failing to grant him youthful offender status. According to the appellant, his youthful offender report prepared by the Probation and Parole Office listed the nature of the charge as murder but did not disclose any prior criminal history. *Page 690 
Furthermore, the appellant produced numerous letters as character references emphasizing that he was well liked and respected in the community and that he had no prior history of violence. Because the State failed to produce any evidence rebutting the appellant's evidence at the hearing, the appellant. asserts that the denial of youthful offender status was based merely upon the nature of the charge. He cites Ex Parte Farrell, 591 So.2d 444,449 (Ala. 1991), to argue that the denial of youthful offender status must be based upon something more than the nature of the charge. However, there is no indication in the record that the appellant objected to the trial court's denial of youthful offender status. Therefore, this issue has not been preserved for our review. Ford v. State, 645 So.2d 317, 318 (Ala.Cr.App. 1994). The appellant's conviction is due to be affirmed.
AFFIRMED.
LONG, P.J., and COBB, BROWN, and BASCHAB, JJ., concur.