898 So.2d 907 (2004)
Frankie David SMITH
v.
STATE of Alabama.
CR-02-1218.
Court of Criminal Appeals of Alabama.
April 30, 2004.
Rehearing Denied July 30, 2004.
Certiorari Denied October 15, 2004.
*908 Clifford Louis Callis, Jr., Scott Stewart, and Jay Stover, Rainbow City, for appellant.
William H. Pryor, Jr., atty. gen., and P. David Bjurberg, asst. atty. gen., for appellee.
Alabama Supreme Court 1031756.
COBB, Judge.
Frankie David Smith was indicted by an Etowah County grand jury for the murder of John Paul Stumler. § 13A-6-2, Ala.Code 1975. A jury found Smith guilty of manslaughter and the trial court imposed a 20-year sentence. This appeal followed. We affirm.
The evidence presented at trial tended to establish the following. Stumler and Smith had been involved in business ventures together. Smith owed Stumler money, but he had been unable to pay the full amount he owed. On December 3, 1998, Stumler met with Etowah County Deputy District Attorney Jimmy Harp to discuss whether he thought Stumler should take the portion of the debt Smith had offered to pay him, whether he should pursue criminal prosecution of Smith, or whether he should file a civil case to obtain all of the money owed to him. The deputy district attorney advised Stumler to take the money Smith had proposed to pay and take a loss on the remainder of the debt.
Smith met Stumler later that day at a warehouse where they had operated a business. Smith killed Stumler at the warehouse. Smith alleged that, when he entered the darkened warehouse, Stumler shined a flashlight in his eyes and asked him if he had any money to give him; Smith told Stumler that he had no money for him. Smith testified that Stumler sprayed something on him that burned his eyes, and then Stumler struck him twice on the back with a bat. Smith said that he *909 wrestled the bat away from Stumler.[1] Smith said that he struck Stumler three times and that Stumler fell to the floor. Smith said that Stumler was bleeding from his head so he wrapped Stumler's head in a plastic garbage bag to keep any more of the blood from getting on the floor. Stumler was dead before he put the plastic bag on his head, Smith said. Smith said that he panicked after he killed Stumler. He secured Stumler's hands and feet with duct tape and covered them with plastic bags. He covered Stumler's body with "shrink wrap," a plastic wrap that he secured tightly around Stumler's body. He then covered Stumler's body with cardboard from the warehouse and he put the body in Stumler's van.
On the day after he killed Stumler, Smith asked his cousin, Rebecca Tidwell, to drive his truck and follow him as he drove the van. They drove to Florida. Smith tied a cinder block to Stumler's wrapped body and threw it from a bridge. Stumler's body remained in the water for several days before it was found floating in the bay where Smith later told authorities he had disposed of it.
The State's theory of the case was that Stumler was not killed by the blows to his head but was asphyxiated when Smith secured the plastic bag over his head. Smith admitted that he killed Stumler, but he claimed that he did so in self-defense. He also contended that Stumler was already dead when he put the bag around Stumler's head to catch the blood. At sentencing following Smith's conviction for the lesser-included offense of manslaughter, the trial court noted that the jury had accepted "the defendant's version as to the circumstances leading up to the affray." (R. 1365.)

I.
Smith first argues that the trial court erred when it permitted the State to present evidence regarding Stumler's autopsy through the testimony of two medical examiners other than the medical examiner who performed the autopsy. He contends now, as he did repeatedly in the court below, that the admission of the testimony and physical evidence violated the Confrontation Clause of the Sixth Amendment. The State argued that the autopsy report and other associated evidence were admissible pursuant to the business-records exception to the rule excluding hearsay evidence. The trial court permitted the State to present the evidence without the testimony of the medical examiner who performed the autopsy. We find that admission of the evidence violated the Confrontation Clause, but that the error was harmless. Therefore, we affirm.

A.
Resolution of this issue requires review and analysis of the relevant caselaw, statutes, and rules of evidence involving the Confrontation Clause and hearsay evidence because the law in this area has evolved considerably. The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Alabama Constitution also states that the accused has a right "to be confronted by the witnesses against him." Ala. Const. of 1901, Art. I, § 6. While these constitutional provisions, read simply, might suggest that personal examination and the right of cross-examination at trial are indispensable and that hearsay *910 evidence could never be admitted, the United States Supreme Court
"has recognized that competing interests, if `closely examined,' Chambers v. Mississippi, 410 U.S. [284,] 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 [(1973)], may warrant dispensing with confrontation at trial. See Mattox v. United States, 156 U.S. [237,] 243, 15 S.Ct. 337, 39 L.Ed. 409 [(1895)] (`general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case'). Significantly, every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings."
Ohio v. Roberts, 448 U.S. 56, 64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), abrogated by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
In Ohio v. Roberts, supra, the United States Supreme Court stated that it had, over time and in a series of cases, attempted to accommodate the foregoing interests, though it had not "sought to `map out a theory of the Confrontation Clause that would determine the validity of all ... hearsay "exceptions."' California v. Green, 399 U.S. [149,] 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 [(1970)]." Ohio v. Roberts, 448 U.S. at 64-65, 100 S.Ct. 2531. The Court in Roberts then set forth what was to become a frequently cited rule regarding the admissibility of hearsay evidence.
"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate `indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."
Ohio v. Roberts, 448 U.S. at 66, 100 S.Ct. 2531 (footnote omitted). The Court further stated that a witness would not be considered "unavailable" unless the prosecution established that it had made "good-faith efforts ... prior to trial to locate and present the witness." 448 U.S. at 74-75, 100 S.Ct. 2531.
The Supreme Court clarified the Roberts decision in United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), when it was called upon to determine whether the Confrontation Clause required proof of the unavailability of the witness before the out-of-court statements of a nontestifying co-conspirator could be admitted, when those statements qualified for admission as nonhearsay, Rule 801(d)(2)(e), Fed.R.Evid. The United States Court of Appeals for the Third Circuit had reversed Inadi's conviction, finding that Ohio v. Roberts required proof of unavailability before any out-of-court statement could be admitted. United States v. Inadi, 748 F.2d 812, 818-19 (3d Cir.1984). The United States Supreme Court reversed the lower court's decision, finding that the Court of Appeals's interpretation of Roberts had been too broad. The Court stated:
"Roberts must be read consistently with the question it answered, the authority it cited, and its own facts. All of these indicate that Roberts simply reaffirmed a longstanding rule, foreshadowed in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), established in Barber [v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)] and refined in a line of cases up *911 through Roberts, that applies unavailability analysis to prior testimony. Roberts cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable."
Inadi, 475 U.S. at 394, 106 S.Ct. 1121 (footnote omitted).
In White v. Illinois, 502 U.S. 346, 348-49, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the Court examined "whether the Confrontation Clause of the Sixth Amendment requires that, before a trial court admits testimony under the `spontaneous declaration' and `medical examination' exceptions to the hearsay rule, the prosecution must either produce the declarant at trial or the trial court must find that the declarant is unavailable." While acknowledging that its discussion of the confrontation issue in Ohio v. Roberts "might suggest that the Confrontation Clause generally requires that a declarant either be produced at trial or be found unavailable before his out-of-court statement may be admitted into evidence," the Court stated, "However, we think such an expansive reading of the Clause is negated by our subsequent decision in Inadi." White, 502 U.S. at 353, 112 S.Ct. 736. The Court again stated that Roberts held that proof of unavailability is required only when the challenged out-of-court statement was made during a prior judicial proceeding. 502 U.S. at 354, 112 S.Ct. 736. The Court then concluded that spontaneous declarations and statements made during the course of medical treatment were "made in contexts that provide substantial guarantees of their trustworthiness." 502 U.S. at 355, 112 S.Ct. 736 (footnote omitted).
The Court in White further explained that evidence that comes within a "firmly rooted" exception to the hearsay rule carries sufficient indicia of reliability and is so trustworthy that the Confrontation Clause is satisfied without cross-examination of the declarant. The Court concluded:
"Given the evidentiary value of such statements, their reliability, and that establishing a generally applicable unavailability rule would have few practical benefits while imposing pointless litigation costs, we see no reason to treat the out-of-court statements in this case differently from those we found admissible in Inadi. A contrary rule would result in exactly the kind of `wholesale revision' of the laws of evidence that we expressly disavowed in Inadi. We therefore see no basis in Roberts or Inadi for excluding from trial, under the aegis of the Confrontation Clause, evidence embraced within such exceptions to the hearsay rule as those for spontaneous declarations and statements made for medical treatment."
White, 502 U.S. at 357, 112 S.Ct. 736.
Justice Thomas, in his concurring opinion, joined by Justice Scalia, argued persuasively that the Court's cases interpreting the Confrontation Clause had "evolved in a manner that is perhaps inconsistent with the text and history of the Clause itself." White v. Illinois, 502 U.S. at 358, 112 S.Ct. 736 (Thomas, J., concurring in part and concurring in the judgment). He noted that the right of confrontation began in 16th century England, when magistrates conducted interrogations before trial and when the proof at the trial consisted of material such as written depositions and confessions obtained through that process. Justice Thomas stated that the Confrontation Clause was intended to prevent defendants from being convicted solely on ex parte affidavits or evidence secured by magistrates and without having the opportunity to confront his accusers. He further stated:

*912 "There appears to be little if any indication in the historical record that the exceptions to the hearsay rule were understood to be limited by the simultaneously evolving common-law right of confrontation. The Court has never explored the historical evidence on this point. As a matter of plain language, however, it is difficult to see how or why the Clause should apply to hearsay evidence as a general proposition."
502 U.S. at 362-63, 112 S.Ct. 736 (footnote omitted).
Justice Thomas suggested that, "in an appropriate case," the Court should reconsider how the admission of hearsay related to the guarantee in the Confrontation Clause of the defendant's right to confront witnesses against him. 502 U.S. at 366, 112 S.Ct. 736. He further suggested the following analysis:
"The federal constitutional right of confrontation extends to any witness who actually testifies at trial, but the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. It was this discrete category of testimonial materials that was historically abused by prosecutors as a means of depriving criminal defendants of the benefit of the adversary process, see, e.g., Mattox v. United States, 156 U.S. [237,] 242-243, 15 S.Ct. 337, 39 L.Ed. 409 [(1895)] and under this approach, the Confrontation Clause would not be construed to extend beyond the historical evil to which it was directed."
502 U.S. at 365, 112 S.Ct. 736.
Recently, the Court did as Justice Thomas suggested in his special writing in White and analyzed the Confrontation Clause and its uneasy relationship to exceptions to the hearsay rule. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Crawford was tried for stabbing a man who allegedly attempted to rape Crawford's wife, Sylvia. Sylvia described the stabbing in a tape-recorded statement to the police, and the statement was played for the jury at Crawford's trial. Crawford objected because he had been given no opportunity to cross-examine Sylvia, but the Washington Supreme Court upheld the conviction, finding that the out-of-court statement was reliable. The United States Supreme Court reversed the conviction, finding that admission of the statement without affording Crawford the right to cross-examination violated the Sixth Amendment.
The Court began its analysis by noting that the text of the Sixth Amendment, specifically the "witnesses against" phrase, could be interpreted to mean those witnesses who actually testify at trial, those whose statements are offered at trial, "or something in-between." 541 U.S. at 43, 124 S.Ct. at 1359. After an extensive discussion of the history of the Confrontation Clause, the Court stated that review of that history supported two inferences. The first inference cited was that the "principal evil" the Confrontation Clause intended to eliminate involved the use of ex parte examinations as evidence against an accused. The Court identified various types of "testimonial" statements that implicated the Confrontation Clause, such as affidavits, custodial examinations, statements taken by police officers during interrogations, and prior testimony that did not afford an opportunity for cross-examination. The second inference the Court found from its examination of Sixth Amendment history was "that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had *913 had a prior opportunity for cross-examination." 541 U.S. at 53-54, 124 S.Ct. at 1365. The Court stated that hearsay exceptions generally did not permit "testimonial statements against the accused in a criminal case." 541 U.S. at 56, 124 S.Ct. at 1367 (footnote omitted). Rather, the Court stated:
"Most of the hearsay exceptions covered statements that by their nature were not testimonial  for example, business records or statements in furtherance of a conspiracy. We do not infer from these that the Framers thought exceptions would apply even to prior testimony. Cf. Lilly v. Virginia, 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion) (`[A]ccomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule')."
541 U.S. at 56, 124 S.Ct. at 1367 (footnote omitted).
The Court held that the admissibility standard developed in Roberts, which allowed the admission of hearsay evidence if it fell within a firmly rooted hearsay exception or had other indicia of reliability, was a "malleable standard [that] often fails to protect against paradigmatic confrontation violations." 541 U.S. at 60, 124 S.Ct. at 1369. When the Roberts test had been applied to testimonial statements, the Court observed, juries had been allowed to hear evidence, not subject to cross-examination, based on trial judges' determinations that the evidence was reliable. The reliability test was unpredictable, the Court stated, and it permitted the admission of "core testimonial statements that the Confrontation Clause was plainly meant to exclude." 541 U.S. at 63, 124 S.Ct. at 1371.
The Court concluded:
"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law  as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of `testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."
541 U.S. at 68, 124 S.Ct. at 1374 (footnote omitted).[2]
Crawford v. Washington has abrogated Ohio v. Roberts, and the lower courts will, once again, attempt to navigate the newly modified course established by the Supreme Court, while accommodating the sometimes competing interests presented by the Confrontation Clause and the hearsay rule.
We have presented the foregoing discussion of the evolution of the principles of *914 confrontation, in part, because the recently decided Crawford decision appears to mark a significant change in the law regarding Confrontation Clause principles. We have also presented the discussion, in part, because it is apparent that our own Court has, on occasion, failed to observe consistently the Confrontation Clause principles as they have evolved, and we now seek to correct that situation.
Alabama appellate courts have often cited and applied Ohio v. Roberts: e.g., Ex parte Strickland, 550 So.2d 1054 (Ala.1989); Grantham v. State, 580 So.2d 53 (Ala.Crim.App.1991); Fortner v. State, 582 So.2d 581 (Ala.Crim.App.1990). When the United States Supreme Court in United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), clarified the unavailability requirement discussed in Roberts, this Court recognized the Inadi decision in at least two opinions. See Daniels v. State, 650 So.2d 544 (Ala.Crim.App.1994); R.L.B. v. State, 647 So.2d 803 (Ala.Crim.App.1994). The Supreme Court's decision in White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), holding that the unavailability analysis was not required when the out-of-court statements were admitted pursuant to the spontaneous-declaration and medical-examination exceptions to the hearsay rule, was cited in several opinions. E.g., Ex parte B.B.S., 647 So.2d 709 (Ala.1994); M.M. v. State, 649 So.2d 1345 (Ala.Crim.App.1994); Hudgins v. State, 615 So.2d 1297 (Ala.Crim.App.1993). Thereafter, however, Alabama Courts often referred to and applied the unavailability analysis as it had originally been interpreted following Roberts, without mentioning or applying Inadi or White. In discussing the unavailability requirement, the Courts frequently cited and quoted Grantham v. State, 580 So.2d 53 (Ala.Crim.App.1991), which was decided before Inadi and White. E.g., Ex parte Scroggins, 727 So.2d 131 (Ala.1998); McNabb v. State, 887 So.2d 929 (Ala.Crim.App.2001); Withee v. State, 728 So.2d 684 (Ala.Crim.App.1998); Radford v. State, 726 So.2d 756 (Ala.Crim.App.1998); Barnes v. State, 704 So.2d 487 (Ala.Crim.App.1997). Although we find that our citation of Roberts and Grantham and the failure to cite or apply Inadi and White did not result in any incorrect decisions, we note that our analysis of confrontation issues has, at times, been less than completely in accord with the principles set forth by the United States Supreme Court.[3]

*915 B.
We now turn to the specific claim raised here, whether the admission of the autopsy evidence and the autopsy report, without the testimony of the medical examiner who performed the autopsy, violated Smith's Sixth Amendment right to confrontation. We find that, in this case, the admission of the evidence was error, but that the error was harmless.[4]
Smith contends on appeal, as he did at trial, that the autopsy evidence should not have been admitted because Dr. Marie Herrmann, the Bay County, Florida, medical examiner who performed the autopsy, was available to testify. He further argues that autopsy evidence had no indicia of reliability. The State cites Inadi and White and correctly argues that the prosecutor did not have to prove that Dr. Herrmann was unavailable to testify. The State further argues on appeal, as it did to the trial court, that the autopsy evidence was admissible as a business-record exception to the hearsay rule. Rule 803(6), Ala. R. Evid.;[5] § 12-21-43, Ala.Code 1975.
We note, at the outset, that the indictment in this case charged Smith with murder by asphyxiation. Smith admitted that he killed Stumler, but he claimed that he killed Stumler by inflicting blows to his head and that these blows were inflicted in self-defense. The autopsy report prepared by the Bay County Medical Examiner, Dr. Herrmann, stated that Stumler died as a result of asphyxiation. Thus, the cause of death was an element of the offense charged in the indictment and that had to be proved at trial. The jury found Smith guilty of the lesser offense of manslaughter.
Before trial, the prosecution filed a "Motion to Determine Admissibility of Evidence." At the pretrial hearing on this matter, and again at trial, the State presented the testimony of Dr. Thomas Beaver, a forensic pathologist and the interim medical examiner for Bay County, Florida. He stated that Dr. Herrmann had left the medical examiner's office and had entered private practice. He testified that he was the custodian for the records related to Stumler's autopsy and he identified the slides, photographs, autopsy report, and other material that had been maintained in his office since Dr. Herrmann performed the autopsy on Stumler. Dr. Beaver stated that the records had not been tampered with and that they were routine records kept in the normal course of business for the medical examiner's office. Dr. Beaver testified that he and Dr. Herrmann had discussed the autopsy findings when she worked on the case, and he agreed with her opinion that Stumler died of asphyxiation.
Dr. Beaver stated that duplicates of the autopsy materials had been transmitted to Dr. Embry, a forensic pathologist with the *916 Alabama Department of Forensic Sciences, for his review. Dr. Embry testified that he could form an opinion as to the cause of death without relying on Dr. Herrmann's written opinion. He further stated that, after reviewing all of the evidence from Stumler's autopsy, he reached the same conclusion Dr. Herrmann had reached, that Stumler died from asphyxiation. Dr. Embry saw nothing in his review of the autopsy materials that indicated that the autopsy was not performed properly. The trial court allowed the State to present the autopsy evidence without the testimony of Dr. Herrmann, and the court allowed Dr. Beaver and Dr. Embry to testify at trial about the evidence.
Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not appear to be implicated here because the evidence at issue is not testimonial. The admissibility of the autopsy report and materials associated with it is governed by hearsay law. This Court has held that an autopsy report is admissible as a business-records exception to the hearsay rule. In Adams v. State, [Ms. CR-98-0496, Aug. 29, 2003] ___ So.2d ___, ___ (Ala.Crim.App.2003), we stated:
"According to § 15-4-2, Ala.Code 1975, the coroner must make a report as to the cause of death of all persons who are not attended by a physician at the time of death. In § 254.02(18), McElroy's Alabama Evidence, (5th ed.1996), Charles Gamble states, `An autopsy report made in the regular course of business is admissible under the business records exception.' In Baker v. State, 473 So.2d 1127 (Ala.Crim.App.1984), we stated:
"`We hold that an autopsy report, made in the regular course of the business of the Department of Forensic Sciences, is admissible into evidence under the Alabama Business Records Act [§ 12-21-43, Ala.Code 1975]. To the extent that such a report contains opinions, those opinions are admissible on the theory that if the physician who performed the autopsy were a witness, his testimony would be admissible as that of an expert.'
"473 So.2d at 1129."
Adams, however, does not easily resolve the issue before us because the autopsy report in Adams was offered during the testimony of the coroner who performed the autopsy; thus, no Confrontation Clause issue was presented. However, we note that there is precedent for the trial court's determination that the autopsy evidence here was admissible as a business records exception.
Under the particular facts of this case, we are compelled to find that admission of the autopsy report and records was error, though harmless. The United States Supreme Court in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), when discussing the relationship between the hearsay rules and the Confrontation Clause, noted that the protections afforded by the Confrontation Clause have sometimes resulted in "admissible" hearsay evidence being ruled inadmissible. The Court stated, "[I]ndeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." 499 U.S. at 155-56, 111 S.Ct. 1171. This Court has made the same observation. E.g., Barnes v. State, 704 So.2d 487, 494 (Ala.Crim.App.1997)(quoting Grantham v. State, 580 So.2d 53, 55 (Ala.Crim.App.1991)). In this case, the manner of death  "asphyxia due to suffocation brought about from the securing of a plastic bag over the head of the said John Paul Stumler"  was alleged in the indictment *917 and was an element of the crime that had to be established by the prosecution at trial. (C. 4.) Smith admitted that he killed Stumler, but he argued that he had done so in self-defense and by striking Stumler on the head with a bat. He alleged that Stumler was already dead when he placed the plastic bag over Stumler's head. The cause of death in this case was a crucial element of the charge against Smith. Without presentation of testimony from the autopsy regarding the cause of death, the prosecution would have failed to establish an element alleged in the indictment. By introducing the records of the autopsy without providing Smith with the opportunity to cross-examine the one forensic pathologist who had observed the body and its wounds and who had conducted the tests on the body, the prosecution was permitted to prove an essential element of the crime without providing Smith with an opportunity to cross-examine the pathologist who originally reached the conclusion that Stumler died of asphyxiation. Under the facts of this case, the Confrontation Clause precluded the prosecution from proving an essential element of its case by hearsay evidence alone.
"The burden of proof in all criminal prosecutions rests upon the State, with the presumption of innocence attending the defendant until that burden of proof has been met. To allow the State to simply introduce a certified copy of a death certificate and, thus shift the burden to the defendant to disprove the facts set out therein would be an unconstitutional burden of such weight as to deprive a defendant of a fair trial and due process of law.
"By use of certified copies of business documents and official records under special statutes providing for such, it could be conceivable that the State could prove some offenses without the necessity of calling any witnesses at all, except for the guarantees of our state and federal constitutions. The right of a defendant to be confronted by witnesses against him, includes the right of cross examination. Madden v. State, 40 Ala.App. 271, 112 So.2d 796 (1959), and cases cited therein."
Lowery v. State, 55 Ala.App. 514, 520-21, 317 So.2d 365, 371 (Ala.Crim.App.1975).
However, violations of the Confrontation Clause are subject to harmless-error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In fact, we have previously held that the admission of an autopsy report without the testimony of the pathologist who performed the autopsy was harmless error. Withee v. State, 728 So.2d 684 (Ala.Crim.App.1998). In Withee, the appellant admitted that he killed the victim, but claimed that he did so while he was in a drug-induced state and only after the victim had pulled out a gun. In support of his self-defense claim, the appellant presented considerable evidence that the victim had frequently threatened him and that the appellant's family had convinced him to move away because of the threats. This Court determined that the autopsy report was not crucial to the State's case and that no error occurred when it was admitted without the testimony of the pathologist who performed the autopsy.[6] We observed that the autopsy report did not influence the jury's verdict, because the jury rejected the appellant's self-defense claim and returned a manslaughter verdict. We then stated:

*918 "Even if the introduction of the autopsy report without Dr. Wanger's testimony were error, the error would be harmless. . . . The evidence presented by the State, exclusive of the autopsy report, was sufficient on which to base a finding that the appellant was guilty of manslaughter beyond a reasonable doubt. Admission of the autopsy report through Dr. Riddick's testimony did not affect the jury's conclusion that the appellant committed manslaughter. Therefore, we find that the admission of the report, even if it was error, was harmless beyond a reasonable doubt."
728 So.2d at 688.
The jury in this case rejected the prosecution's assertion that Smith committed murder; it instead found him guilty of manslaughter. As in Withee, we find that the evidence presented was sufficient to support the jury's finding that Smith was guilty of manslaughter. Smith admitted that he was younger and heavier than Stumler. He stated that, after Stumler sprayed a mace-like substance in his eyes and hit him with the bat, he struggled with Stumler and took the bat away from him. Thereafter, Smith claimed, he struck Stumler on the head, killing him. The facts overwhelmingly support the manslaughter conviction, even without consideration of the autopsy report. Therefore, the error in the admission of the report without the testimony of Dr. Herrmann was harmless and does not require a reversal.

II.
Smith next argues that the trial court erred in admitting the autopsy report, photographs, microscopic slides, and other evidence secured by Dr. Herrmann during the autopsy because, he says, the prosecution failed to prove a proper chain of custody. Specifically, Smith argues that because Dr. Herrmann created or procured the evidence from the autopsy, the evidence was not admissible without her testimony as "the link who created this evidence." (Smith's brief at p. 41.) We disagree.
Proof of the chain of custody for evidence offered is presented to establish to a reasonable probability that the evidence has not been tampered with. Harrison v. State, 869 So.2d 509 (Ala.Crim.App.2002). A trial court's ruling on an objection to the chain of custody is reviewed for an abuse of discretion. Powell v. State, 796 So.2d 404, 421 (Ala.Crim.App.1999). The Alabama Supreme Court established the chain-of-custody analysis to be applied:
"This opinion sets forth an analysis to be followed in deciding whether a proper chain of custody has been shown. We have held that the State must establish a chain of custody without breaks in order to lay a sufficient predicate for admission of evidence. Ex parte Williams, 548 So.2d 518, 520 (Ala.1989). Proof of this unbroken chain of custody is required in order to establish sufficient identification of the item and continuity of possession, so as to assure the authenticity of the item. Id. In order to establish a proper chain, the State must show to a `reasonable probability that the object is in the same condition as, and not substantially different from, its condition at the commencement of the chain.' McCray v. State, 548 So.2d 573, 576 (Ala.Crim.App.1988). Because the proponent of the item of demonstrative evidence has the burden of showing this reasonable probability, we require that the proof be shown on the record with regard to the various elements discussed below.
"The chain of custody is composed of `links.' A `link' is anyone who handled *919 the item. The State must identify each link from the time the item was seized. In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2)[the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3)[the] safeguarding and handling of the item between receipt and disposition.' Imwinklereid, The Identification of Original, Real Evidence, 61 Mil.L.Rev. 145, 159 (1973).
"If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a `missing' link, and the item is inadmissible. If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the `link,' as to one or more criteria or as to one or more links, the result is a `weak' link. When the link is `weak,' a question of credibility and weight is presented, not one of admissibility."
Ex parte Holton, 590 So.2d 918, 919-20 (Ala.1991).
We note, further, that § 12-21-13, Ala.Code 1975, provides as follows:
"Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
Dr. Herrmann was, at most, a "weak link" in the chain of custody, and the absence of her testimony did not preclude the admission of testimony about the autopsy.
Officer Frank Partee of the Gadsden Police Department was present when Stumler's body was retrieved from the bay. He identified photographs of the body that were taken at that time. He further identified photographs of Stumler's body taken before and during the autopsy examination in the autopsy lab in Florida. The photographs depicted the manner in which Stumler's body was wrapped when it was recovered. The photographs were consistent with the description of the body in the autopsy report, and they were consistent with the details Smith provided in his confession. Officer Robert Griffith of the Gadsden Police Department testified that he was present when Stumler's body was retrieved from the bay. He stated that he was present when items were removed from Stumler's pocket, including a piece of paper with the telephone number for Etowah County Deputy District Attorney Jimmy Harp. Griffith was present when the autopsy was performed, and he took possession of blood and tissue samples taken from Stumler during the autopsy. Griffith later took the samples to Phyllis Rollan of the Department of Forensic Sciences. Phyllis Rollan testified that she received from Officer Griffith the blood and tissue samples taken during Stumler's autopsy.
No evidence in this record indicates that the autopsy evidence had been altered or tampered with. No evidence indicates that the physical evidence and report of the autopsy were from any autopsy other than Stumler's. We find no abuse of discretion *920 in the trial court's denial of Smith's chain-of-custody objections.

III.
Smith argues, last, that the trial court erred when it denied his motion for a judgment of acquittal as to the murder charge. He contends that the State had the burden of proving the elements of murder as charged in the indictment, specifically, that he intended to kill Stumler and that asphyxiation was the cause of Stumler's death. Smith contends that the admission of the autopsy evidence as a business-records exception to the rule against hearsay violated his right to confront the witnesses against him, and that, if the evidence had not been admitted, the trial court would have granted his motion for acquittal. Although Smith was charged with murder by asphyxiation, the jury found him guilty of manslaughter. Therefore, the trial court's denial of the motion for a judgment of acquittal as to the murder charge presents nothing for this Court to review.
This Court has previously addressed the issue presented here. When presented with the claim Smith raises here, we stated:
"The appellant contends that the trial court erred in denying his motion for a judgment of acquittal made at the close of the State's case. . . . The appellant specifically argues that the State's evidence failed to prove a prima facie case of murder and, therefore, that his conviction should be reversed and a judgment rendered in his favor. We hasten to point out, however, that the appellant was not convicted of murder. Although the indictment charged him with murder, the jury found the appellant guilty of the lesser-included offense of reckless manslaughter. Therefore, manslaughter is the only charge subject to appellate review. See, e.g., McCain v. State, 611 So.2d 1123, 1124 (Ala.Crim.App.1992) (`The charge upon which the conviction rests is the only charge that is subject to appellate review.'). See also Williams v. State, 695 So.2d 644 (Ala.Crim.App.1996); and Gagliardi v. State, 695 So.2d 206 (Ala.Crim.App.1996). The appellant does not argue on appeal the sufficiency of the evidence to sustain his conviction for manslaughter; therefore, there is nothing for this Court to review."
Chestang v. State, 837 So.2d 867, 869 (Ala.Crim.App.2001)(footnote omitted).
For the reasons discussed in Chestang, we find that Smith has not presented an issue for our review as to the denial of the motion for judgment of acquittal.

Conclusion
Although we find that this case presented a violation of Confrontation Clause principles, Smith's conviction is not due to be reversed because the error was harmless. Because the other issues Smith raised in this appeal were meritless or unreviewable, we affirm the judgment of the Circuit Court of Etowah County.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, J., concur; SHAW, J., concurs in part, and concurs in the result in part, with opinion; WISE, J., concurs in the result.
SHAW, Judge, concurring in part and concurring in the result in part.
I concur in Parts II and III of the main opinion. However, for the following reasons, I concur only in the result as to Part I.
As the main opinion correctly notes, the United States Supreme Court, in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), made a significant departure from its previous interpretation *921 of the Confrontation Clause, as set out in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, without dwelling on every aspect of the Supreme Court's decision, I note that there are two questions that, at least in my view, are not clearly answered in the Crawford opinion: 1) What is the exact distinction between a "testimonial" and a "nontestimonial" statement? and 2) Did the Court's holding in White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (that the Confrontation Clause has some field of operation in cases involving non-testimonial evidence), survive the Crawford decision?
With respect to the first question, I note that although the United States Supreme Court gave several specific examples of testimonial evidence,[7] and suggested that business records, by their nature, may not constitute such evidence, the Court did not specifically address statements made by a medical examiner in an autopsy report prepared in anticipation of a criminal prosecution. The Court did state that the fact that a statement was not made under oath or in traditional testimony form is not dispositive in characterizing it as either testimonial or nontestimonial. The Court further noted:
"The text of the Confrontation Clause reflects this focus. It applies to `witnesses' against the accused  in other words, those who `bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). `Testimony,' in turn, is typically `[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
"Various formulations of this core class of `testimonial' statements exist: `ex parte in-court testimony or its functional equivalent  that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' Brief for Petitioner 23; `extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition  for example, ex parte testimony at a preliminary hearing."
*922 Crawford, 124 U.S. at 51-52, 124 S.Ct. at 1364.
With respect to the second question, I note that the Court stated:
"Although the results of our decisions have generally been faithful to the original meaning of the Confrontation Clause, the same cannot be said of our rationales. [Ohio v.] Roberts [, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980),] conditions the admissibility of all hearsay evidence on whether it falls under a `firmly rooted hearsay exception' or bears `particularized guarantees of trustworthiness.' 448 U.S., at 66, 100 S.Ct. 2531. This test departs from the historical principles identified above in two respects. First, it is too broad: It applies the same mode of analysis whether or not the hearsay consists of ex parte testimony. This often results in close constitutional scrutiny in cases that are far removed from the core concerns of the Clause. At the same time, however, the test is too narrow: It admits statements that do consist of ex parte testimony upon a mere finding of reliability. This malleable standard often fails to protect against paradigmatic confrontation violations.
"Members of this Court and academics have suggested that we revise our doctrine to reflect more accurately the original understanding of the Clause. See, e.g., Lilly[ v. Virginia], 527 U.S. [116] 140-143, 119 S.Ct. 1887, 144 L.Ed.2d 117 [(1999)] (BREYER, J., concurring); White[ v. Illinois], 502 U.S. [346] at 366, 112 S.Ct. 736, 116 L.Ed.2d 848 [(1992)] (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); A. Amar, The Constitution and Criminal Procedure 125-131 (1997); Friedman, Confrontation: The Search for Basic Principles, 86 Geo. L.J. 1011 (1998). They offer two proposals: First, that we apply the Confrontation Clause only to testimonial statements, leaving the remainder to regulation by hearsay law  thus eliminating the overbreadth referred to above. Second, that we impose an absolute bar to statements that are testimonial, absent a prior opportunity to cross-examine  thus eliminating the excessive narrowness referred to above.
"In White, we considered the first proposal and rejected it. 502 U.S., at 352-353, 112 S.Ct. 736. Although our analysis in this case casts doubt on that holding, we need not definitively resolve whether it survives our decision today, because Sylvia Crawford's statement is testimonial under any definition. This case does, however, squarely implicate the second proposal."
Crawford, 541 U.S. at 60-61, 124 S.Ct. at 1369-70.
With these questions on the table, and necessarily with little guidance, the majority holds that the statements made by the medical examiner in the autopsy report are nontestimonial and, therefore, that the holding in Crawford has no application. However, even assuming that the majority has guessed correctly as to whether the medical examiner's statements are nontestimonial,[8] the question remains whether *923 the Confrontation Clause has any field of operation. Recognizing that the Crawford Court only signaled the apparent impending demise of White v. Illinois, supra, leaving a possible death blow for a future decision, it nonetheless appears to me that this Court's finding of error in the admissibility of the autopsy report is inconsistent with the Supreme Court's basic holding in White  that a statement that qualifies for admission under a "firmly rooted" hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability. The majority does not hold that the business-records exception to the hearsay rule is not "firmly rooted"; therefore, I question the majority's conclusion that admission of the report was error.
However, I find it unnecessary to determine in this case whether the autopsy report was testimonial or nontestimonial in nature and whether the admission of the report was error. I agree with the majority that if there was any error in admitting the autopsy report, that error was harmless beyond a reasonable doubt.
NOTES
[1] Stumler's widow testified that her husband was 58 years old, that he weighed approximately 165 pounds, and that he suffered extensively from arthritis. Smith testified that he was 30 years old at the time of the crime and weighed approximately 190 pounds.
[2] The Court mentioned, inter alia, Justice Thomas's concurring opinion in White v. Illinois, 502 U.S. at 366, 112 S.Ct. 736, and its suggestions that "we apply the Confrontation Clause only to testimonial statements, leaving the remainder to regulation by hearsay law. . . . In White, we considered [that] proposal and rejected it. 502 U.S., at 352-353, 112 S.Ct. 736. Although our analysis in this case casts doubt on that holding, we need not definitively resolve whether it survives our decision today. . . ." 541 U.S. at 61, 124 S.Ct. at 1370 (emphasis added).
[3] Perhaps the case presenting circumstances closest to those presented in this case and in which we applied the "unavailability analysis" was Barnes v. State, 704 So.2d 487 (Ala.Crim.App.1997). In Barnes, the defendant was charged with burglary-murder and rape-murder. §§ 13A-5-40(a)(4), -40(a)(3), Ala.Code 1975. Barnes's defense was that he was present at the burglary but that he had no part in the rape or murder. Dr. Leroy Riddick performed the autopsy on the victim and he gathered evidence from the victim's body from which subsequent DNA testing indicated the strong likelihood that Barnes had committed the rape. Dr. Riddick did not testify at trial. Dr. Wanger, who observed portions of the autopsy but who did not see Dr. Riddick take the specimens, testified about the autopsy pursuant to the business-records exception to the hearsay rule, § 12-21-43, Ala.Code 1975. We reversed Barnes's conviction, finding that Barnes should have been permitted to confront and cross-examine Dr. Riddick because he actually collected the specimens. Although we incorrectly relied on the unavailability test and cited Grantham v. State, 580 So.2d 53 (Ala.Crim.App.1991), we further observed that the DNA evidence refuted Barnes's defense and established the element of rape. We stated, "[W]ithout that evidence, Barnes could not have been convicted of capital-murder arising out of a rape." 704 So.2d at 496. We also noted that evidence that is admissible pursuant to an exception to the hearsay rule can still violate a defendant's confrontation rights. Although we articulated the incorrect analytical standard, the result in Barnes was nonetheless correct. Like the case before us, the hearsay testimony established a crucial element of the crime, without which the State would have been unable to prove its case as alleged in the indictment. Under those particular circumstances, which are again presented in this case, we find that a defendant's confrontation rights superseded the evidentiary rule that would have permitted the State to rely solely on hearsay evidence to establish a necessary element of the crime.
[4] In his brief on appeal, Smith relies on Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and he quotes at length from Grantham v. State, 580 So.2d 53 (Ala.Crim.App.1991). He does not cite United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), or White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).
[5] Rule 803, Ala. R. Evid., specifically provides that the exceptions to the hearsay rule are not excluded "even though the declarant is available as a witness."
[6] We note, however, that our analysis was based on the application of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and the "availability test," without reference to United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).
[7] The Court stated:

"We leave for another day any effort to spell out a comprehensive definition of `testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."
Crawford, 541 U.S. at 68, 124 S.Ct. at 1374 (footnote omitted).
[8] Justice Rehnquist, concurring in the judgment in Crawford, noted:

"But the thousands of federal prosecutors and the tens of thousands of state prosecutors need answers as to what beyond the specific kinds of `testimony' the Court lists, see ibid., is covered by the new rule. They need them now, not months or years from now. Rules of criminal evidence are applied every day in courts throughout the country, and parties should not be left in the dark in this manner."
541 U.S. at 75-76, 124 S.Ct. at 1378. My remarks in this special writing are in no way intended to be critical of the majority's attempt to extrapolate on the Crawford decision.